UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DARYL GIFFORD, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>BRIAN SMITH, )<br>)<br>Respondent. ) | No. 2:20-cv-00056-JRS-MJD |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Daryl Gifford's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISF 19-07-0219. For the following reasons, Mr. Gifford's petition is **granted**.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On June 15, 2018, investigators at Putnamville Correctional Facility (PCF) began investigating Mr. Gifford's potential involvement in efforts to traffic contraband into the prison. Dkt. 9 (ex parte). The respondent has filed a report of the investigation, which describes an attempt to smuggle contraband into PCF during a visit and a separate attempt to have suboxone thrown over a fence at the facility. *Id.*

On July 16, 2019, Investigator Evans presented the findings of his investigation in the following conduct report:

> I, R. Evans, Investigator/CPO, with the Office of Investigations and Intelligence (OII) obtained actionable Intelligence related to trafficking. Based on recorded GTL phone calls Investigators determined offender Daryl Gifford #166644 was attempting to have Danielle J. Gondocs (W/F) smuggle contraband into the Putnamville Correctional Facility during a visit that would occur on 6/18/19. Prior to the visit, Gondocs failed to answer phone calls prior to the visit. Gifford was unable to make contact with Gondocs.
>
> On 6/20/19 Gifford using the Pin number #101876 (Harry Fluharty) he calls the phone number 765-918-1809. This number belongs to Cherokee Carlton. She is the daughter of Angela Taylor the "girlfriend" of offender Gifford. During recorded GTL calls, Gifford calls Cherokee and then speaks to recently released offender Thaddeus Addler #267814. During those calls Gifford informs Addler he should expect an overnight package. Gifford tells Addler he knows what to do with, they talked about it before Addler went home. Gifford Calls Cherokee again and speaks to Addler. During this call Gifford tells Addler he will meet up with a couple people so he can pick up the contraband. Before the contraband could be delivered 77 strips of Suboxone was recovered from a location in Lafayette, IN prior to being delivered to Addler.

Dkt. 8-1. The conduct report includes all material facts set out in the confidential investigation report.

On July 17, 2019, Mr. Gifford received notice that he was charged with conspiring to traffic in violation of Codes 111A and 113A. Dkt. 8-2. Mr. Gifford requested to review the intercepted suboxone. *Id.* The prison staff denied this request, noting that the drugs were in the custody of another law enforcement agency. *Id.*

2

Later on July 17, Mr. Gifford submitted an additional evidence request to the hearing officer, Sergeant Criss: "I would also like to include as in the evidence. All of the alleged phone calls that were made." Dkt. 2-1 at 2. Sergeant Criss twice delayed Mr. Gifford's hearing to gather that evidence. Dkts. 8-3, 8-4.

Sergeant Criss prepared what he called a written "representation of the phone calls that [Mr. Gifford] requested." Dkts. 8-7, 8-8. This "representation" includes written descriptions of seven phone conversations between Mr. Gifford and a person identified as "Callee." *Id.* The calls are placed between the evenings of June 15 and 16, 2019. *Id.*

It is not clear how much of each call Sergeant Criss described in his representation. According to Sergeant Criss, Mr. Gifford asked Callee to send money to a PayPal account associated with a phone number; discussed getting "a ride" for Callee from a person connected to another PCF inmate; and discussed arrangements for Callee to pick up a rental car paid for by another person but reserved in Callee's name. Dkts. 8-7, 8-8. Neither the investigation report, the conduct report, nor the respondent's briefing explains whether or how these calls are related to either the alleged attempt to smuggle contraband into the prison through Gondocs or to the alleged attempt with Addler to have suboxone thrown over the fence.

The respondent has filed, ex parte, audio recordings of 17 telephone calls. Dkt. 10. No portion of the evidentiary record or briefing identifies the times of, parties to, or matters discussed in these calls.

ISF 19-07-0219 proceeded to a disciplinary hearing on August 1, 2019. Dkt. 8-6. According to Sergeant Criss's report, Mr. Gifford made the following statement in his defense:

> I do not deny making the phone calls. There was nothing in them pertaining to trafficking. I feel I made/helped with an unauth. financial transaction. I in no way att. to traffick.

*Id.*

3

Sergeant Criss found Mr. Gifford guilty "due to staff reports." *Id.* He checked a box indicating he considered "staff reports," which the Court understands to refer to the investigation report and conduct report prepared by Officer Evans. *Id.* Sergeant Criss did not check boxes to indicate he considered sources of evidence, making it unclear whether he reviewed or considered any phone calls beyond the seven he summarized for Mr. Gifford.

Sergeant Criss sanctioned Mr. Gifford by depriving him of earned credit time and demoting him one credit-earning class. *Id.* Mr. Gifford's administrative appeals were unsuccessful. Dkts. 8-9, 8-10.

### III. Analysis

Mr. Gifford asks for habeas relief on several grounds. At least one entitles him to the relief he seeks. The materials before the Court show that Mr. Gifford was denied his right to present evidence to an impartial decisionmaker.

Due process entitles prisoners to a limited opportunity to present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563–67. The right is limited in that it extends only to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

As the petitioner, Mr. Gifford faces the burden of establishing that the evidence he was denied was material and exculpatory. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). On the other hand, prison officials "have the burden of proving that their denial

4

of requested evidence was not 'arbitrary or capricious.'" *Johnson v. Brown*, 681 F. App'x 494, 496–97 (7th Cir. 2017) (citing *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002)). For example, "[p]rison authorities are not compelled to accept requests [for evidence] that threaten institutional goals." *Donelson v. Pfister*, 811 F.3d 911, 918 (7th Cir. 2016) (internal citation and quotation marks omitted). The Seventh Circuit has approved of withholding evidence from inmates "where prison officials have asserted a bona fide security justification, for example, that if the inmate were permitted to watch the tape, he might learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future." *Piggie v. Cotton*, 344 F.3d at 679. Despite this latitude, the respondent still must demonstrate that the denial was not arbitrary or capricious. *See Johnson*, 681 F. App'x at 496–97.

There is no question that Mr. Gifford properly and timely requested—but never received—evidence of "[*a*]*ll* of the alleged phone calls." Dkt. 2-1 at 2 (emphasis added). Sergeant Criss fulfilled part of that request by creating a written "representation" of seven of the phone calls. Dkts. 8-7, 8-8.

Sergeant Criss did not justify his denial of the request as it related to the other phone calls. Indeed, he did not even acknowledge that records of the remaining phone calls—of which there were at least ten—existed. *See* dkt. 10. Sergeant Criss's "representation" ignores any phone calls after June 16—and all the phone calls between Mr. Gifford and Addler.

Mr. Gifford has met his burden of demonstrating that he was denied potentially material, exculpatory evidence. The conduct report and investigative report indicate that Mr. Gifford's phone calls to Addler were critical to the case against him. Dkts. 8-1, 9. Mr. Gifford asserted at his hearing that none of his phone calls included discussions of trafficking. Dkt. 8-6. Without reviewing evidence of the calls, he could not make a stronger case that they were material and exculpatory.

Meanwhile, the respondent has not met his burden of demonstrating that Sergeant Criss's withholding of the remaining phone calls was not arbitrary or capricious. The respondent has not asserted any justification for the withholding—much less a justification that passes constitutional muster.

As a final matter, when prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson*, F. App'x at 497 (quoting *Piggie v. Cotton*, 344 F.3d at 679). This requirement does not save the respondent. First and foremost, the Court reiterates that neither Sergeant Criss nor the respondent has attempted to justify withholding evidence of the remaining phone calls. Second, the respondent has done literally nothing to guide a review of the audio recordings filed ex parte. "Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court . . . to paw through the assembled discovery material." *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002). "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) (internal quotations omitted). The Court will not "sift through the record and make" the respondent's "case for him." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 511 (7th Cir. 2010).

## IV. Conclusion

Daryl Gifford's petition for a writ of habeas corpus challenging prison disciplinary proceeding ISF 19-07-0219 is **granted**. Mr. Gifford's disciplinary conviction must be **vacated** and his sanctions **rescinded**. His earned credit time and credit-earning class must be **immediately restored**, and his new release date must be calculated accordingly.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 12/8/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DARYL GIFFORD
166644
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov